UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

DERRICK HAMILTON,

                    Plaintiff,

                                          **DECISION AND ORDER**
      -vs-                                **No. 6:12-CV-6449(MAT)**

Commissioner BRIAN FISCHER, New
York State's Department of
Correctional Services, Director
NORMAN BEZIO, Supt. JAMES CONWAY,
Supt. PAUL CHAPPIUS, Dep. Supt.
Pro. DOLCE, Captain BROWN, Captain
C. ROBINSON, Sergeant PETER
CORCORAN, CO C. BURGIO, CO M.
DUSTERHUS, CO HEMBROOK,

                    Defendants.

─────────────────────────────

## I.   Introduction

Pro se plaintiff Derrick Hamilton ("Hamilton" or "Plaintiff")
instituted this action (Dkt #1) pursuant to 42 U.S.C. § 1983
alleging that Defendants, employees of the New York State
Department of Corrections and Community Supervision ("DOCCS"),
violated his constitutional rights while he was incarcerated at
Attica Correctional Facility ("Attica").

On October 4, 2012, the Court (Curtin, D.J.) granted Hamilton
leave to proceed as a poor person and dismissed Hamilton's official
capacity claims against Defendants. The Court also dismissed with
prejudice the Seventh Claim in the Complaint, which asserted a
First Amendment claim of denial of access to the courts.

Defendants Patricia A. Klatt and DOCCS were dismissed with prejudice. See Dkt #3.

In lieu of an answer, Defendants filed a partial motion to dismiss and for summary judgment (Dkt #10), which Plaintiff has opposed (Dkt #18). The matter was transferred to the undersigned on June 27, 2013 (Dkt #19).

## II. Factual Background

The following facts—viewed in the light most favorable to Plaintiff—are taken from the Complaint and from the parties' submissions in conjunction with Defendants' motion. See, e.g., Lipton v. Nature Co., 71 F.3d 464, 471 (2d Cir. 1995) ("For the purposes of a summary judgment motion, courts are required to view the facts in the light most favorable to the parties opposing the motion and to suspend judgments on credibility.").

### A. "First Claim"

Plaintiff's First Claim involves Deputy Superintendent of Programs ("DSP") Dolce, Correction Officer ("CO") Burgio, and CO Dusterhus. According to Plaintiff, on August 19, 2009, CO Burgio and CO Dusterhus refused to pick up his mail; deprived him of breakfast, dinner, a shower, and recreation; turned off the water and electricity to his cell from 12:30 p.m. to 3:00 p.m.; and kicked and banged on the cell's metal back wall. At one point during the day, these correction officers directed derogatory remarks at Hamilton, including "snitch". Plaintiff states that DSP

Dolce witnessed CO Burgio's and CO Dusterhus' "malevolent" name-calling but ignored Plaintiff's pleas for assistance. During the afternoon, CO Burgio and CO Dusterhus "attempted to piss on [him] by urinating through the air vent" to the cell, and only stopped when Hamilton announced, "Thanks for the DNA!" Complaint ("Compl.") at 5-6 (Dkt #1). Hamilton used a new towel to soak up the urine and placed the towel in a plastic bag in order to preserve it as evidence.

Hamilton asserts the following constitutional grounds for relief based upon the First Claim's factual allegations: Due Process Clause (Fourteenth Amendment); Free Speech Clause (First Amendment); Access to the Courts (First Amendment); Freedom from Cruel and Unusual Punishment (Eighth Amendment); Failure to Protect (Eighth Amendment); Equal Protection Clause (Fourteenth Amendment); and "Universal Human Rights Article Six". See Compl. at 6.

## B. "Second Claim"

On August 20, 2009, the day after CO Burgio and CO Dusterhus allegedly urinated into the air vent of Plaintiff's cell, Plaintiff requested that Captain Brown ("Capt. Brown") secure the urine-soaked towel as evidence and subject it to DNA testing. Capt. Brown declined to do so. Plaintiff asserts that Deputy Superintendent of Security Paul Chappius ("DSS Chappius") and DSP Dolce failed to grant his request to file criminal charges against CO Burgio and CO Dusterhus for their actions. In addition, Plaintiff complains that

-3-

DOCCS Commissioner Brian Fischer ("Comm'r Fischer") and Attica Superintendent James Conway ("Sup't Conway") failed to respond to his letters demanding an investigation and the filing of criminal charges.

Based upon the allegations in support of the Second Claim, Plaintiff asserts entitlement to relief under these legal theories: the Equal Protection Clause (Fourteenth Amendment); the Free Speech Clause (First Amendment); Failure to Protect (Eighth Amendment); Unreasonable Searches and Seizures (Fourth Amendment); the Due Process Clause (Fourteenth Amendment); the Prohibition Against Cruel and Unusual Punishment (Eighth Amendment); and "Universal Human Rights Article Six". See Compl. at 8.

**C.    "Third Claim"**

Plaintiff asserts that on September 7, 2009, while he was drying off in the shower, CO Burgio said to him, "I'll tell Dusty [CO Dusterhus] to back off and I'll leave you alone if you let me taste that," and "nodd[ed] down towards [Plaintiff's] penis[,] which was covered by [his] towel." Compl. at 9. Plaintiff told CO Burgio to leave, and CO Burgio responded, "If you don't let me suck your dick, I'm going to come up in there and find something to give you the next ten years in the box." Id. An inmate housed near Hamilton's cell laughed, causing CO Burgio to depart.

Based upon the foregoing allegations, Plaintiff asserts entitlement to relief under these legal theories: the Free Speech

Clause (First Amendment); the Equal Protection Clause (Fourteenth Amendment); Freedom from Cruel and Unusual Punishment (Eighth Amendment); Failure to Protect (Eighth Amendment); and Universal Human Rights Article Six. See Compl. at 9.

### D. "Fourth Claim"

Plaintiff asserts that on October 8, 2009, he was "headed to a legal visit", apparently with an investigator from DOCCS' Inspector General's Office, when he was assaulted by Sergeant Peter Corcoran ("Sgt. Corcoran"), CO Burgio, CO Dusterhus, and several other unidentified correction officers. CO Dusterhus rifled through his legal folders while CO Burgio slammed his right elbow into Plaintiff's back and began grinding his crotch against Plaintiff's hip and buttock area in a sexually suggestive way. Upon finding the the "DNA evidence" (the urine-soaked towel) referenced in the First Claim, supra, CO Dusterhus nodded to CO Burgio, who then grabbed a handful of Plaintiff's dreadlocks and yanked Plaintiff's head straight back, causing Plaintiff to defecate upon himself. CO Burgio punched Plaintiff in the right temple with so much force that Plaintiff momentarily blacked out. CO Dusterhus hit Plaintiff in the head with a baton, yelling, "Bitch, you thought you were getting away, huh, bitch!" Sgt. Corcoran was stomping on him and kicking him in the head, stating, "Not so tough now, huh, monkey nigger? This is Attica, I'll fucking bury you here!" Plaintiff put his hands around his head to deflect the blows, and CO Burgio began

pulling Plaintiff's pants down and attempting to anally sodomize him with a baton. Plaintiff's belt kept his pants up and prevented CO Burgio from completing the sodomy.

Once Plaintiff was handcuffed, Sgt. Corcoran stated, "Scalp that monkey nigger. Rip those [sic] shit right out his fucking head!" At that point, multiple correction officers began ripping out handfuls of Plaintiff's dreadlocks. Plaintiff states that he was in "unbearable pain" with "raw patches of bleeding scalp" following the attack. An unidentified correction officer said, "Turn this asshole over so I can mow the other side." However, someone called out, "Camera is here," and the assault ended. Sgt. Corcoran directed that Plaintiff be stood up but kept facing the wall so that he could not see his attackers. CO Burgio filed a misbehavior report charging Plaintiff with assault on a staff member and refusal of a frisk.

Based upon the foregoing factual allegations, Hamilton asserts claims under the following legal theories: Free Exercise Clause (First Amendment); Free Speech Clause (First Amendment); Right to Petition the Government for Redress (First Amendment); Right of Access to the Courts (First Amendment); Equal Protection Clause (First Amendment); Cruel and Unusual Punishment (Eighth Amendment); Failure to Protect (Eighth Amendment); Excessive Force (Eighth Amendment); the Due Process Clause (Fourteenth Amendment); and "Universal Human Rights Article Six". See Compl. at 13.

### E. "Fifth Claim"

CO Burgio filed a misbehavior report against Hamilton for assaulting staff based upon the incident described in the Fourth Claim, supra. Capt. Robinson presided over a Tier III disciplinary hearing on these charges which was conducted on October 14, 2009; October 16, 2009; October 17, 2009; and October 23, 2009. Capt. Robinson found Hamilton guilty and imposed a sentence of fourteen (14) months in the special housing unit ("SHU"). The guilty finding was upheld on administrative appeal.

However, on November 7, 2011, while Hamilton's proceeding pursuant to Civil Practice Law and Rules Article 78 was pending in state court, Acting Director of Special Housing and Inmate Disciplinary Programs D. Venettozzi administratively reversed the disciplinary hearing and ordered expungement of the charges from Hamilton's records.[1] The Appellate Division, Third Department, of New York State Supreme Court, consequently dismissed Hamilton's Article 78 proceeding as moot on January 23, 2012.

Hamilton asserts claims under the following legal theories in regard to the allegations under the Fifth Claim: Due Process Clause (Fourteenth Amendment); Access to the Court (First Amendment); Equal Protection Clause (Fourteenth Amendment); Cruel and Unusual

---

[1] The respondent in Plaintiff's Article 78 proceeding was Norman Bezio, Director of Special Housing and Inmate Disciplinary Programs ("DSH Bezio"), who has been named as a defendant in this action.

-7-

Punishment (Eighth Amendment); and "Universal Human Rights Article Six". <u>See</u> Compl. at 14.

**F.    "Sixth Claim"**

Hamilton asserts that between October 8, 2009, and January 28, 2010, DSS Chappius, CO Burgio, and other unidentified staff members acted in concert with CO Hembrook, the SHU Property Officer, to steal Hamilton's wedding band. In addition, these individuals acted in concert to steal four personally produced books of art. Hamilton further alleges that CO Hembrook and DSS Chappius acted in concert to assert that all pieces of electronic equipment in his possession were unlawfully altered. Instead of writing a misbehavior report for possession of altered electronic equipment, CO Hembrook and CO Burgio stole and destroyed these items on October 18, 2009.

Hamilton asserts claims based on the following legal theories in regard to the allegations under the Sixth Claim: Due Process Clause (Fourteenth Amendment); Unreasonable Search and Seizure (Fourth Amendment); Equal Protection Clause (Fourteenth Amendment); and "Universal Human Rights Article Six". <u>See</u> Compl. at 15.

**III. General Legal Principles**

**A.    42 U.S.C. § 1983**

In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish the following elements: (1) conduct attributable at least in part to a person acting under color of state law; and (2) deprivation, as the result of the challenged

-8-

conduct, of a right, privilege, or immunity secured by the Constitution or laws of the United States. <u>Dwares v. City of New York</u>, 985 F.2d 94, 98 (2d Cir. 1993). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144, n. 3 (1979)).

**B.  Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see</u> <u>generally</u>, <u>e.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Celotex Corp.</u>, 477 U.S. at 324.

In order to establish a material issue of fact, the nonmovant need only provide "sufficient evidence supporting the claimed factual dispute" such that a "jury or judge [is required] to resolve the parties' differing versions of the truth at trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986) (quoting <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to

'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U .S. at 587 (quoting FED. R. CIV. P. 56(e) advisory committee's note on 1963 amendments).

## C. Construction of Pro Se Pleadings

Because Hamilton's complaint alleges civil rights violations, and he is proceeding pro se, the Court must "construe his complaint with particular generosity." Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002) (per curiam) (citing Vital v. Interfaith Med. Ctr., 168 F.3d 615, 619 (2d Cir. 1999)), abrogated on other grounds, Porter v. Nussle, 534 U.S. 516 (2002). Nevertheless, even pro se complaints "relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).

## IV. Defendants' Motion to Dismiss and Motion for Summary Judgment

### A. "Universal Human Rights, Article VI"

Under each discrete group of factual allegations in his Complaint, Hamilton asserts that Defendants have violated the so-called "Universal Human Rights Article Six", which the Court has construed as the Universal Declaration of Human Rights ("UDHR"), G.A. Res. 217(III)A, U.N. Doc. A/810 (1948). See Sosa v. Alvarez-Machain, 542 U.S. 692, 734 (2004) (discussing the UDHR). Defendants

have moved to dismiss all of Hamilton's claims purportedly based on the UDHR.

A violation of a treaty entered into by the United States can serve as a basis for a claim for damages under 42 U.S.C. § 1983, as long as the treaty allows for a private right of action. Ciaprazi v. Goord, No. Civ.9:02CV00915(GLS), 2005 WL 3531464, at *15 (N.D.N.Y. Dec. 22, 2005)(citing Standt v. City of New York, 153 F. Supp.2d 417, 422-30 (S.D.N.Y. 2001) (finding private right of action under 42 U.S.C. § 1983 for violation of the Vienna Convention on Consular Relations, 21 U.S.T. 77, 101 T.I.A.S. No. 6820, 596 U.N.T.S. 261 (April 24, 1963)). Self-executing treaties generally have the force of domestic law and can be directly enforced by courts[,]" Guaylupo-Moya v. Gonzales, 423 F.3d 121, 133 (2d Cir. 2005) (citations omitted), but "when a treaty is not self-executing, the treaty does not provide independent, privately enforceable rights." Id. (citations omitted).

The UDHR is not a treaty with signatories, but rather a declaration adopted by the United Nations General Assembly on December 10, 1948, "setting up a common standard of achievement for all peoples and all nations." Sosa, 542 U.S. at 734 (citation and quotation omitted); see also Beharry v. Reno, 183 F. Supp.2d 584, 596 (E.D.N.Y. 2002), rev'd on jurisdictional grounds sub nom. Beharry v. Ashcroft, 329 F.3d 51 (2d Cir. 2003). As such, it does not provide a cognizable basis for relief in this § 1983 action.

**B. Lack of Personal Involvement By the Supervisory Defendants**

Imposition of liability under 42 U.S.C. § 1983 requires a defendant's direct involvement in the alleged constitutional violation. See, e.g., Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). This requirement may be satisfied by alleging facts showing that (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberated indifference to others' rights by failing to act on information indicating that constitutional acts were occurring. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); see also Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986). The following defendants argue that all claims should be dismissed against them because Hamilton has not alleged sufficient personal involvement on their parts:

Comm'r Fisher, Sup't Conway, DSS Chappius, Capt. Brown, DSP Dolce, and DSH Bezio.

### 1. DSP Dolce

The only allegations regarding DSP Dolce are set forth in connection with the First Claim and the Second Claim. In the First Claim, Hamilton states that DSP Dolce observed CO Burgio and CO Dusterhus verbally harassing him, but she failed to intervene. Hamilton's allegations that he was threatened and verbally berated do not state an independent constitutional claim, insofar as he has failed to allege any concomitant injury. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed.") (citing McCann v. Coughlin, 698 F.2d 112, 126 (2d Cir. 1983)). DSP Dolce's alleged involvement in a non-cognizable claim is not sufficient to impose liability upon her.

In connection with the Second Claim, Hamilton complains that DSP Dolce failed to investigate the incident in which CO Burgio and CO Dusterhus urinated into the air vent of his cell. As discussed below, that allegation does not state an actionable constitutional claim and is thus an insufficient basis upon which to impose liability. DSP Dolce is dismissed as a defendant.

### 2.   DSS Chappius and Capt. Brown

Hamilton alleges that DSS Chappius and Capt. Brown failed to investigate the incident in which CO Burgio and CO Dusterhus urinated into the air vent of his cell. As discussed below, the Court finds that the allegations regarding this incident fail to articulate a constitutional claim. Accordingly, any claim of liability on Capt. Brown's and DSS Chappius's part in regards to CO Burgio's and CO Dusterhus's alleged wrongdoing must be dismissed.

Hamilton also alleges, in support of the Sixth Claim, that DSS Chappius, along with CO Hembrook and CO Burgio, stole and destroyed some of his personal property. As discussed below, the allegations regarding the theft and destruction of Hamilton's personal property do not state an actionable constitutional claim. Thus, any claim that DSS Chappius is liable for his subordinates' alleged misconduct regarding Hamilton's personal property must fail. DSS Chappius and Capt. Brown are dismissed as defendants.

### 3.   Comm'r Fischer

Hamilton does not allege that Comm'r Fischer was personally involved in any of the alleged misconduct described in the First, Second, and Third Claims. Instead, Hamilton asserts that he filed formal complaints with Comm'r Fischer regarding the events set forth in those claims. Hamilton does not provide any further particulars about what happened with the complaints, and there is no indication that Comm'r Fischer acted on them. Numerous courts

have held that merely receiving a prisoner's letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim. <u>Richardson v. Coughlin</u>, 101 F. Supp.2d 127, 132-33 (W.D.N.Y. 2000) (collecting cases). Likewise, "allegations that an official ignored a prisoner's letter or grievance, is insufficient to establish personal liability for purposes of section 1983." <u>Atkins v. County of Orange</u>, 251 F. Supp.2d 1225, 1233 (S.D.N.Y. 2003). Based upon Hamilton's allegations, Comm'r Fischer's involvement appears to be limited to his having received various complaints filed by Hamilton. The Court declines to find that Comm'r Fischer's personal involvement has been sufficiently alleged. <u>See</u>, <u>e.g.</u>, <u>Ramos v. Artuz</u>, No. 00 Civ. 0149(LTS)(HBP), 2001 WL 840131, at *7 (S.D.N.Y. July 25, 2001) ("District Courts [in this Circuit] have generally been reluctant to find personal involvement sufficient to support liability where a prison official's involvement is limited to the receipt of a prisoner's letters or complaints."); <u>Garvin v. Goord</u>, 212 F. Supp.2d 123, 126 (W.D.N.Y. 2002) ("[W]here a commissioner's involvement in a prisoner's complaint is limited to forwarding of prisoner correspondence to appropriate staff, the commissioner has insufficient personal involvement to sustain a § 1983 cause of action").

Furthermore, as discussed below, the allegations adduced by Hamilton in support of the First, Second, and Third Claims do not

sufficiently make out constitutional violations. Where there is no unconstitutional conduct by Comm'r Fischer's subordinates, there is no basis for imposing liability upon him. Comm'r Fischer is dismissed as a defendant.

### 4. Sup't Conway

Hamilton asserts that he filed complaints with Sup't Conway regarding the First and Second Claims. As discussed below, the allegations adduced by Hamilton in support of the First and Second Claims do not sufficiently assert constitutional violations. Sup't Conway cannot be held liable where there is no underlying unconstitutional conduct by his subordinates.

Hamilton also states that he filed a grievance regarding the Sixth Claim, which Sup't Conway denied. As discussed below, the Sixth Claim, which alleges that several defendants conspired to steal his personal property, does not make out a viable constitutional claim. Sup't Conway cannot be held liable in a supervisory capacity if his subordinates are not directly liable. Sup't Conway is dismissed as a defendant.

### 5. DSH Bezio

Hamilton asserts that DSH Bezio wrongfully affirmed the adverse disciplinary ruling issued by Capt. Robinson in connection with the assault charges (Fourth and Fifth Claims). DSH Bezio's liability for failing to correct errors on appeal depends on the existence of errors in the proceeding below. As discussed further,

*infra*, the Court finds that Hamilton has not adequately established procedural due process errors on the part of Capt. Robinson. There accordingly is no basis for his claims against DSH Bezio. E.g., Clyde v. Schoellkopf, 714 F. Supp.2d 432, 439 (W.D.N.Y. 2010) (citing, inter alia, Black v. Selsky, 15 F. Supp.2d 311, 318 (W.D.N.Y. 1998)). DSH Bezio is dismissed as a defendant.

**C.  Alleged Violations of the Equal Protection Clause**

Plaintiff asserts that he is entitled to relief under the Equal Protection Clause of the Fourteenth Amendment in connection with the First, Second, Third, Fourth, Fifth, and Sixth Claims in the Complaint. To state a viable equal protection claim, a plaintiff generally must allege either "purposeful discrimination, directed at an identifiable or suspect class," Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995) (internal and other citation omitted), or that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). To succeed on a "class—of—one" claim, a plaintiff must establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a

mistake." <u>Ruston v. Town Bd. for Town of Skaneateles</u>, 610 F.3d 55, 59-60 (2d Cir. 2010) (quotation and internal quotation marks omitted).

There are no facts alleged in connection with the First, Second, Third, Fifth, and Sixth Claims, however, that tend to show that Hamilton was treated differently on account of his membership in a suspect class, that any similarly situated inmates of a different class were treated more favorably than he, or that Hamilton was singled out for discriminatory treatment on account of his membership in a suspect class. The Equal Protection claims asserted in the First, Second, Third, Fifth, and Sixth Claims accordingly are dismissed with prejudice.

With regard to the Fourth Claim (the use of force which involved an attempted sodomy and the ripping out of Plaintiff's dreadlocks), however, Plaintiff has adequately pled an equal protection claim. Plaintiff asserts that several of the Defendants involved in the use of force used racially derogatory insults, which he identifies with particularity, throughout the assault. This "strongly suggest[s]" that Plaintiff "would have been treated differently had he not been black." <u>Burton v. Livingston</u>, 791 F.2d 97, 100 (8th Cir. 1986); <u>see also</u> <u>Merritt v. Hawk</u>, 153 F. Supp.2d 1216, 1225 (D. Colo. 2001) ("[P]laintiff has described numerous racial and anti-semitic epithets aimed at him during alleged assaults. Plaintiff's allegations are sufficient to suggest he was

treated differently than similarly situated inmates. Therefore, defendants' motions for summary judgment will be denied on plaintiff's Equal Protection claim . . . .").

## D. Claims Against Capt. Robinson Arising from the Disciplinary Hearing

Defendants have moved to dismiss the procedural due process claims asserted against Capt. Robinson, who presided over the disciplinary hearing[2] on the assault and related charges. Plaintiff asserts that in retaliation for his alleged assault on staff, Capt. Robinson "subjected him to physical torture and dehumanization" during the disciplinary hearing by (1) having him handcuffed behind his back, even though he was secured in a metal cage; (2) denying him the use of his reading glasses; (3) failing to have the escort guards loosen the handcuffs even though he repeatedly stated they were extremely tight; and (4) sentencing him to 14 months in solitary confinement.

The Court notes that Plaintiff's claim regarding the denial of his reading glasses is more properly analyzed under the Due Process Clause as an alleged denial of the right to assistance in preparing a defense, see Benitez v. Straley, No. 01 Civ. 0181(RCC)(RLE), 2006 WL 5400078, at *16 (S.D.N.Y. Feb. 16, 2006), and will be discussed

---

[2]

The transcript of the disciplinary hearing has been submitted as an attachment (Dkt #32-4) to the Declaration of Bernard Sheehan, Esq., submitted in support of Defendants' motion for summary judgment.

in the next section of this Decision and Order. Plaintiff's assertions that Capt. Robinson applied the handcuffs unnecessarily and too tightly are analyzed under the Eighth Amendment as claims of excessive force. E.g., Benitez v. Ham, No. 9:04-CV-1159, 2009 WL 3486379, at *15 (N.D.N.Y. Oct. 21, 2009) (citing Davidson v. Flynn, 32 F.3d 27, 29-30 (2d Cir. 1994)). Defendants have not moved to dismiss the Eighth Amendment claims arising from the disciplinary hearing, and the Eighth Amendment claims asserted in connection with the Fifth Claim may proceed.

## 1. Due Process Clause

Defendants have moved to dismiss the due process claims asserted in connection with the Fifth Claim. Due process under the Fourteenth Amendment requires that an inmate charged with a disciplinary violation be given (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the hearing officer as to the evidence relied on for his decision, and the reasons for the disciplinary action taken. Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1986), reh'g en banc denied, 826 F.2d 194 (2d Cir. 1987), cert. denied, 485 U.S. 982 (1988) (citing Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974)). Upon determining that these procedural due process requirements have been met, the reviewing court must determine "whether there is *some* evidence

which supports the decision of the prison disciplinary board." Id. at 954-55 (citing Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 453-55 (1985) (emphasis added). "Essentially, a court should not overturn a prison disciplinary board's finding of guilt if there is *any* evidence to support the board's conclusion." Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988) (citing Hill, 472 U.S. at 455-56; Freeman, 808 F.2d at 955; emphasis in original).

To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, the reviewing court must find that, as the result of conduct performed under color of state law, the inmate was deprived of life, liberty, or property without due process of law. Bedoya v. Coughlin, 91 F.3d 349, 351 (2d Cir. 1996). It is undisputed that Capt. Robinson acted under color of state law. The remaining inquiry comprises two prongs: (1) whether Hamilton had a protected liberty interest in not being confined pursuant to the SHU sentence he served; and, if so, (2) whether the deprivation of this liberty interest occurred without due process of law. Id. at 351-52 (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460-61 (1989)). Defendants have assumed arguendo that Hamilton had a protectible liberty interest in being free from the SHU sentence imposed by Capt. Robinson following the disciplinary hearing, and the Court has done the same. The alleged due process violations are addressed in turn below.

### a.  Denial of Evidentiary Requests

Hamilton asserts that Capt. Robinson denied him "relevant oral and documentary evidence" and denied him "material witnesses". Although the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals[,]" Wolff, 418 U.S. at 566, "[i]t is well settled that an official may refuse to call witnesses as long as the refusal is justifiable." Scott v. Kelly, 962 F.2d 145, 147 (2d Cir. 1992) (citing, inter alia, Wolff, 418 U.S. at 566-67). "[A] prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity." Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991); accord Scott, 962 F.2d at 147.

Hamilton requested as witnesses Sup't Conway, Capt. Brown, Inspector General Wiley, and DSS Chappius on the basis that they could offer testimony regarding "mitigating circumstances", i.e., that he was being retaliated against for having filed grievances against CO Burgio and CO Dusterhus. Capt. Robinson declined to call the requested witnesses because they were not present for the incident on which the disciplinary hearing was based, and he deemed their testimony to be irrelevant. Testimony that Hamilton had filed grievances against the correction officers who accused him of assault would not have been irrelevant to his defense that he was

the subject of retaliation. However, both correction officers testified and admitted they were aware that Hamilton had filed grievances against them. Thus, the testimony by Sup't Conway, Capt. Brown, Inspector General Wiley, and DSS Chappius arguably would have been cumulative. In any event, the failure to call these witnesses was at most harmless error, as the absence of their testimony would have had no effect on the hearing's outcome.

As far as document requests, Hamilton requested copies of "grievances" he had filed in the time leading up to the incident. However, Capt. Robinson did attempt to obtain copies the grievances that Hamilton had filed, and found copies of two grievances from June 2009, neither of which involved the two correction officers involved in the incident. Hamilton objected, noting that he was dissatisfied with Capt. Robinson's search because it did not uncover a grievance he had filed in August 2009, about the harassment incident involving CO Burgio and CO Dusterhus. Hamilton explained that he had not complained about this incident by filing a grievance with the Inmate Grievance Program ("IGP"), but instead had submitted complaints directly to the supervisory Defendants. However, Hamilton did not specify that he wanted Capt. Robinson to search for complaints, which are apparently recorded in a different log than grievances.

In any event, the Court cannot say that Capt. Robinson abused his discretion in declining to undertake a further search for the

August 2009 complaints. Both CO Burgio and CO Dusterhus testified that they were aware that Hamilton had filed complaints against them, and their testimony indicates that they knew he had filed complaints about their actions in August 2009, prior to the use-of-force incident. Thus, even if there was error, it was harmless.

### b. Bias

Hamilton also asserts in a conclusory fashion that Capt. Robinson was not impartial. It is "improper for prison officials to decide the disposition of a case before it [i]s heard," although given the "special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process." Francis v. Coughlin, 891 F.2d 43, 47 (2d Cir. 1989) (citation omitted). After reviewing the transcript of the hearing, the Court does not find that it raises a suggestion of overt or implied bias on the part of Capt. Robinson. That Capt. Robinson ruled adversely to Hamilton does not demonstrate bias or partiality. See Lebron v. Artus, No. 06-CV-0532(VEB), 2008 WL 111194, at *15-16 (W.D.N.Y. Jan. 9, 2008) ("Lebron's claim of bias boils down to his disagreement with the hearing officer's evidentiary rulings against him, an insufficient basis upon which to rest a claim that the disciplinary hearing was infected with constitutionally

impermissible bias on the part of the hearing officer.") (citing
<u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994)).

### c. Denial of Reading Glasses

An inmate has a constitutional right to assistance in
establishing a defense to disciplinary charges, and prison
officials are obligated to provide such assistance-though not in
the form of an attorney. <u>Eng v. Coughlin</u>, 858 F.2d 889, 897
(2d Cir. 1988) (citation omitted). Plaintiff asserts that because
Capt. Robinson wrongfully did not ensure that he had access to his
reading glasses prior to and during the hearing, he was unable to
adequately prepare his defense. This contention is belied by the
hearing transcript, which indicates that Hamilton had read, or was
reading from, several documents. It is apparent from a review of
the transcript that Hamilton was able to "marshal evidence and
prepare a defense[,]" <u>Eng</u>, 858 F.2d at 898, despite the lack of his
reading glasses.

For the foregoing reasons, the procedural due process claims
asserted in the Fifth Claim are dismissed with prejudice.

### E. First Amendment Right to Governmental Redress

Defendants have moved to dismiss Plaintiff's claims asserting
that his First Amendment "right to governmental redress" was
violated in connection with the events alleged in the Fourth Claim
(the assault by CO Burgio and others). As noted above, Plaintiff
asserts that his legal papers and the urine-soaked towel were

-25-

stolen during that incident. Defendants argue that Plaintiff has not set forth his right-to-governmental-redress claim with sufficient particularity.

Inmates have a First Amendment right to "petition the Government for a redress of grievances." See U.S. CONST., amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."). "This right, which is more informally referred to as a 'right of access to the courts,' requires States 'to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights.'" Vega v. Artus, 610 F. Supp.2d 185, 201 (N.D.N.Y. 2009) (citing Bounds v. Smith, 430 U.S. 817, 828 (1977), modified on other grounds, Lewis v. Casey, 518 U.S. 343, 350 (1996)). The right to petition also includes the right to file grievances through administrative channels in the prison. See, e.g., Govan v. Campbell, 289 F. Supp.2d 289, 297 (N.D.N.Y. 2003) (analyzing inmate's claim that was prevented from filing grievances under First Amendment right to petition the government for the redress of grievances) (citations omitted).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury. Lewis, 518 U.S.

at 353; see also Amaker v. Hakes, 919 F. Supp. 127, 130 (W.D.N.Y. 1996) (inmate must set forth facts tending to show that the alleged deprivation "actually interfered with his access to the courts, or prejudiced an existing legal action") (citing Jermosen v. Coughlin, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (citing Hikel v. King, 659 F. Supp. 337, 340 (E.D.N.Y. 1987) (plaintiff failed to show how the destruction of documents could have impeded any suit that he had or could have brought)); Rodriguez v. Coughlin, 795 F. Supp. 609, 613-14 (W.D.N.Y. 1992) ("Plaintiff in the instant dispute has not alleged any harm from the temporary deprivation of his [legal] complaint, much less any facts supporting such a charge.") (citing Morgan v. Montanye, 516 F.2d 1367, 1372 (2d Cir. 1975)).

Plaintiff has alleged that CO Burgio and CO Dusterhus maliciously attacked him and stole his legal papers and the urine-soaked towel, which he was going to use to file a complaint with the Inspector General's office about them. In fact, Plaintiff states that when he was brought out of his cell prior to the attack, he was told he was going to meet someone from the Inspector General's Office. Thus, he had his legal materials with him. The Court finds that with regard to the allegations in support of the Fourth Claim, Plaintiff has adequately pled a right-to-petition claim under the First Amendment.

**F.    The First Amendment's Free Exercise Clause**

Plaintiff asserts that his right to the free exercise of his religion under the First Amendment was violated in connection with certain events alleged in the Fourth Claim when CO Burgio and other correction officers intentionally ripped out of his dreadlocks, which was a "desecration of [his] locks and the Holy Covenant [it] represent[s] between I [sic] and the God Almighty." Compl. at 12; see also id. at 18-19.

The First Amendment guarantees the right to the free exercise of religion. Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)). At least one court in this Circuit has held that an inmate, who was a Rastafarian and who wore dreadlocks in keeping with the tenets of that religion, stated a free exercise claim when he alleged that while searching him for contraband, correction officers ran their hands through his hair and ripped out some of the dreadlocks, even though he informed them it was against his religious beliefs to have anyone else touch his hair. Shepherd v. Goord, No. 9:04-CV-655, 2008 WL 4283410, at *9 (N.D.N.Y. Sept. 16, 2008) ("Liberally construed, Shepherd alleges that Tweed and Post cut his hair, a violation of his religious beliefs. See Benjamin [v.

<u>Coughlin</u>], 905 F.2d [571,] 576-77 [(2d Cir. 1990)]. If proven, these allegations suffice to establish a constitutional deprivation."). With regard to the allegations in support of the Fourth Claim, the Court concludes that Hamilton has adequately pled a free exercise claim against CO Burgio (for actually ripping out Plaintiff's dreadlocks) and Sgt. Corcoran (for ordering his subordinates to rip out Plaintiff's dreadocks).

### G. The Theft of Personal Property

Under the Complaint's Sixth Claim, Plaintiff asserts that DSS Chappius, CO Hembrook, and CO Burgio acted in concert to "steal, destroy and otherwise cause the destruction of [his] personal property[,]" including his wedding band and "four personally produced books of art." Compl. at 15. Defendants have construed the Sixth Claim as asserting a state-law claim based upon the theft of Plaintiff's personal property and have moved to dismiss it pursuant to N.Y. CORR. LAW § 24. Plaintiff has not explicitly asserted a state-law legal theory as a grounds for relief, however. Instead, Plaintiff appears to be asserting that he was deprived of his personal property without due process of law.

Generally speaking, neither negligent nor intentional deprivations of inmate property are sufficient to trigger the protections of the due process clause of the Fourteenth Amendment, provided that there exists an "adequate post-deprivation remed[y] for addressing such circumstances. . . ." <u>Hudson v. Palmer</u>, 468

U.S. 517, 533 (1984). Because state officials cannot anticipate when such negligent or intentional destruction of property will occur, "'predeprivation procedures' are simply 'impracticable.'" Id.; see also DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003) (noting that where it is "impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding"). New York provides such a remedy in § 9 of the New York Court of Claims Act which permits an inmate to pursue a claim for deprivation of property against the State of New York in the New York Court of Claims. Smith v. O'Connor, 901 F. Supp. 644, 647 (S.D.N.Y. 1995) (collecting cases); see also Forman v. Coughlin, No. 93 Civ. 8412 (LAK), 1994 WL 708150, at *1 (S.D.N.Y. Dec. 20, 1994) ("New York has adequate remedies [for deprivation of property claims] via recourse to the New York Court of Claims. The Constitution requires nothing further."). Hamilton may pursue his claim in state court regarding the theft and destruction of his property by means of an action in the Court of Claims. Id. Even if Hamilton fails to take advantage of these state-law procedures, his complaints about the treatment of his personal property do not become a constitutional due process claim. Id. (citing Franco v. Kelly, 854 F.2d 584, 588 (2d Cir.) ("'[S]ection 1983 cannot be made a vehicle for transforming mere civil tort injuries into constitutional injuries.'") (quoting Morello v. James, 810 F.2d 344, 347 (2d Cir. 1987)).

**V.    Claims That Warrant <u>Sua</u> <u>Sponte</u> Dismissal**

"[E]ven where a defendant has not requested dismissal based on the failure of the plaintiff to state a claim upon which relief may be granted, a district court may, <u>sua</u> <u>sponte</u>, address whether a <u>pro se</u> prisoner has failed to state a claim upon which relief may be granted." <u>Zimmerman v. Burge</u>, No. 06-cv-0176 (GLS-GHL), 2008 WL 850677, at *7 (N.D.N.Y. Mar. 28, 2008);[3] <u>see</u> <u>generally</u>, <u>e.g.</u>, <u>Leonhard v. United States</u>, 633 F.2d 599, 609 n.11 (2d Cir. 1980) ("The district court has the power to dismiss a complaint <u>sua</u> <u>sponte</u> for failure to state a claim, <u>Robins v. Rarback</u>, 325 F.2d 929 (2d Cir. 1963), <u>cert.</u> <u>denied</u>, 379 U.S. 974, 85 S. Ct. 670, 13 L. Ed.2d 565 (1965); <u>see</u> 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE s 1357, at 593 (1969)). The district court must bear in mind, however, that "a dismissal on the court's own initiative, without affording the plaintiff either notice or an opportunity to be heard-is disfavored in federal practice." <u>Gonzalez-Gonzalez v.</u>

---

[3]    The district court's authority to conduct this analysis on its own initiative derives from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding <u>in</u> <u>forma</u> <u>pauperis</u>] at any time if the court determines that  . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ." <u>See</u> <u>Zimmerman</u>, 2008 WL at * n. ).

United States, 257 F.3d 31, 36 (1ˢᵗ Cir. 2001). In general, when addressing a pro se complaint, a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (denying leave to amend where problem was "substantive" and "better pleading will not cure it") (internal quotation and citation omitted).

### A.   "First Claim"

#### 1.   Fourteenth Amendment – Due Process

"The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest." Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995) (citing, inter alia, Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982)). In the factual allegations set forth under the First Claim, Hamilton has not described either a liberty or property interest, and he has not indicated the process of which he was deprived. Therefore, he has failed to state a constitutional claim upon which relief may be granted.

## 2.    First Amendment - Free Speech

"Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). "In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." Id. (citations omitted). Although a prisoner has a right to be present when his legal mail is opened, Wolff v. McDonnell, 418 U.S. at 574-76, "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." Davis, 320 F.3d at 351 (citing Morgan v. Montanye, 516 F.2d 1367, 1371 (2d Cir. 1975); Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986)). Instead, the inmate must show that prison officials "regularly and unjustifiably interfered with the incoming legal mail." Cancel v. Goord, No. 00 Civ.2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001) (citing Washington, 782 F.2d at 1139); accord Davis, 320 F.3d at 351.

Here, the First Claim's allegations of interference with Hamilton's mail cover only one day. A discrete incident such as this is insufficient to state a constitutional violation. Plaintiff's First Amendment interference-with-mail claims against CO Burgio, CO Dusterhus, and DSP Dolce, as set forth in the "First Claim", are dismissed.

### 3.    First Amendment - Access to the Courts

Even read with the utmost liberality, the factual allegations set forth under the First Claim do not suggest that Hamilton's right of access to the courts was abrogated in any way.

### 4.    Eighth Amendment – Cruel and Unusual Punishment

An Eighth Amendment claim challenging prison deprivations requires proof of a subjective and an objective component. Rivera v. Senkowski, 62 F.3d 80, 84 (2d Cir. 1995) (citations omitted). The prison officials must have acted subjectively with deliberate indifference toward an inmate's health or safety; and the inmate's deprivation, objectively viewed, must have been sufficiently serious to have denied that inmate the "minimal civilized measure of life's necessities." Branham v. Meachum, 77 F.3d 626, 630-31 (2d Cir. 1996) (citing Wilson v. Seiter, 501 U.S. 294, 297-98 (1997); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied, 513 U.S. 1154 (1995)).

The deprivation of one shower and one session of recreation do not state a claim under the Eighth Amendment. See McCoy v. Goord, 255 F. Supp.2d 233, 260 (S.D.N.Y. 2003) ("A two-week suspension of shower privileges does not suffice as a denial of basic hygienic needs."); Ford v. Phillips, No. 05 CIV.6646, 2007 WL 946703, at *9 (S.D.N.Y. Mar. 27, 2007) (finding that, as a matter of law, minor and temporary deprivations of property, showers and recreation do not violate the Eighth Amendment); Davidson v. Coughlin, 968 F.

-34-

Supp. 121, 129 (S.D.N.Y. 1997) ("[A] prisoner may satisfy the objective component of the Eighth Amendment test by showing that he was denied meaningful exercise for a substantial period of time.").[4]

Plaintiff's allegation that CO Burgio and CO Dusterhus turned off the water and electricity to his cell from 12:30 p.m. to 3:00 p.m. does not state an Eighth Amendment claim. See, e.g., McFadden v. Solfaro, Nos. 95 Civ. 1148(LBS), 95 Civ. 3790(LBS), 1998 WL 199923, at *13 (S.D.N.Y. Apr. 23, 1998) (allegation that water was shut off for two three-day stints did not state a claim of constitutional dimension). Likewise, the allegation that CO Burgio and CO Dusterhus kicked and banged on the cell's metal back wall at some point during their shift one day does not, without more, state a constitutional claim.

Finally, the allegation that CO Burgio and CO Dusterhus urinated into the air vent of his cell on one occasion constitutes

---

[4]

On the other hand, under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (citations omitted). In this Circuit, courts have held that when a correction officer deprives a prisoner of two of the three regular meals served each day, the objective prong of the Eighth Amendment may be met if the prison officials do not show that the one meal served is nutritionally adequate. Beckford v. Portuondo, 151 F. Supp.2d 204, 213 (N.D.N.Y. 2001) (citing Cunningham v. Jones, 567 F.2d 653, 660 (6th Cir. 1977). Hamilton's allegation that he was wantonly deprived of two meals in one day thus suffices to a claim under the Eighth Amendment. Benitez v. Locastro, No. 9:04-CV-423, 2008 WL 4767439, at *6 (N.D.N.Y. Oct. 29, 2008).

no more than a de minimis action "best described as harassment, not cruel and unusual punishment, and therefore fall short of meeting the objective component of the Eighth Amendment standard." Benitez, 2008 WL 4767439, at *5 (citations omitted); see also id. at *6 (allegation that correction officers threw urine and dirty mop water on inmate through cell's observation window and ceiling air vent did not state viable claims under the Eighth Amendment).

### 5.    Eighth Amendment – Failure to Protect

Plaintiff asserts that CO Burgio and CO Dusterus exposed him to an unreasonable risk of harm by calling him a "snitch" in front of other inmates and commenting, "Whatever happened to stitches for snitches?"

Courts have recognized that "being labeled a 'snitch' in the prison environment can indeed pose a threat to an inmate's health and safety in violation of the Eighth Amendment,' David v. Hill, 401 F. Supp.2d 749, 756 (S.D. Tex. 2005)," Abney v. Jopp, 655 F. Supp.2d 231, 233 (W.D.N.Y. 2009), but "in general prison officials will not be liable for such actions absent a showing that the inmate suffered actual harm as a result." Id. At a minimum, the plaintiff-inmate must show that the defendant's actions "gave rise to an excessive risk to [his] safety." Abney, 655 F. Supp.2d at 233 (citing, inter alia, Bouknight v. Shaw, No. 08 Civ 5187, 2009 WL 969932, at *4 (S.D.N.Y. Apr. 6, 2009)). Here, Hamilton has not sufficiently alleged any facts that, if proven, would establish

that he ever faced actual or imminent harm," Bouknight, 2009 WL 969932, at *4; see also Green v. City of New York Dep't of Corrs., No. 06 Civ. 4978, 2008 WL 2485402, at *7 (S.D.N.Y. June 19, 2008) ("In the cases cited by Plaintiff in which courts found viable Eighth Amendment claims premised on being labeled a 'snitch,' there were allegations or proffered evidence of actual physical harm") (collecting cases)).

**B.    "Second Claim"**

**1.    Fourth Amendment – Prohibition Against Unreasonable Searches and Seizures**

It is not clear how the Fourth Amendment's proscription against unreasonable searches and seizures could apply to the Second Claim, the gravamen of which is that Capt. Brown refused to submit the "DNA evidence" from the urination incident for testing. See Compl. at 7. In short, Plaintiff does not have a claim under the Fourth Amendment based on the facts adduced in connection with the Second Claim.

**2.    Fourteenth Amendment – Due Process Clause**

Plaintiff asserts that Capt. Brown, DSS Chappius, DSP Dolce, Comm'r Fischer and Sup't Conway failed to investigate the incident in which CO Burgio and CO Dusterhus urinated into the air vent of his cell. These failures to investigate do not give rise to colorable constitutional claims. See, e.g., Green v. Herbert, 677 F. Supp.2d 633, 639 (W.D.N.Y. 2010) (finding that inmate's allegation that officer who was assigned to investigate his

grievance conducted a biased, unfair investigation "fail[ed] [to state a constitutional claim] because an inmate 'has no constitutional right to have his grievances processed or investigated in any particular manner'") (quoting <u>Shell v. Brzezniak</u>, 365 F. Supp.2d 362, 379 (W.D.N.Y. 2005)); <u>Swift v. Tweddell</u>, 582 F. Supp.2d 437, 445-46 (W.D.N.Y. 2008) (stating that "a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim").

Likewise, the refusals by DSS Chappius, DSP Dolce, Comm'r Fischer, and Sup't Conway to file criminal charges against CO Burgio and CO Dusterhus for urinating into the air vent of his cell do not amount to colorable constitutional claims. <u>See Lewis v. Gallivan</u>, 315 F. Supp.2d 313, 317 (W.D.N.Y. 2004) (holding that inmate had "no cognizable claim" that the sheriff and district attorney's office "were under an obligation to investigate or prosecute" his claims that correctional officers had threatened him) (citations omitted). Moreover, as to the supervisory defendants (Comm'r Fischer and Sup't Conway), Plaintiff has not alleged sufficient personal involvement on their parts with regard to the events described in the Second Claim. <u>See Garrido v. Coughlin</u>, 716 F. Supp. 98, 100 (S.D.N.Y. 1989) ("[Commissioner] Coughlin's only alleged connection to this case—that he ignored [inmate] Garrido's letter of protest and request for an

investigation of the allegations made in this action—is insufficient to hold him liable under this [Circuit's personal involvement] standard for the alleged violations.") (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986) (other citations omitted)).

### 4.    Eighth Amendment – Failure to Protect

"The term 'failure to protect,' in prisoner civil rights cases, generally refers to a failure to protect the inmate from physical injury." Barnes v. Fedele, 760 F. Supp.2d 296, 301 (W.D.N.Y. 2011) (citing Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (noting that the Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates in their custody") (citation omitted)). The allegations set forth under Hamilton's Second Claim do not indicate that he was physically harmed in any way, or even put at risk of physical harm. See Barnes, 760 F. Supp.2d at 301 (finding inmate failed to state a failure-to-protect claim where complaint "does not allege that plaintiff was physically harmed in any way, or even put at risk of physical harm"). Hamilton instead appears to be using the term "failure to protect" to mean a failure to prevent or remedy the alleged violations of his constitutional rights, e.g., by investigating the allegedly offending correction officers. Such an assertion has already been addressed elsewhere in this opinion.

Because the allegations in support of the Second Claim do not sufficiently assert an Eighth Amendment "failure to protect" cause of action, <u>see</u> <u>Barnes</u>, 760 F. Supp.2d at 301, the "failure to protect" claims set forth under the Second Claim, against Capt. Brown, DSS Chappius, DSP Dolce, Comm'r Fischer, and Sup't Conway are dismissed.

## C.   "Third Claim"

### 1.   Eighth Amendment – Cruel and Unusual Punishment

Plaintiff asserts that CO Burgio violated his Eighth Amendment right to be free from cruel and unusual punishment by asking to perform oral sex on him. Even accepting as true Plaintiff's allegation that CO Burgio's sexually solicited him on one occasion, Plaintiff has failed to articulate an actionable constitutional claim. See, <u>e.g.</u>, <u>Davis v. Castleberry</u>, 364 F. Supp.2d 319, 321 (W.D.N.Y. 2005) ("Even assuming that Casselberry did touch plaintiff's penis, however, I find that insufficient to state a constitutional claim.") (citing <u>Boddie v. Schneider</u>, 105 F.3d 857, 861 (2d Cir. 1997) (holding that several instances of alleged sexual harassment and touching, though "despicable" and "potentially . . . the basis of state tort actions," "d[id] not involve a harm of federal constitutional proportions as defined by the Supreme Court") (citations omitted); <u>Williams v. Keane</u>, No. 95 CIV. 0379, 1997 WL 527677, at *1 (S.D.N.Y. Aug. 25, 1997) (fondling

of inmate's chest and testicles during a pat-frisk did not state an Eighth Amendment claim)).

### 2. Eighth Amendment – Failure to Protect

Related to the above claim, Hamilton asserts that Defendants violated their obligation under the Eighth Amendment to protect him from constitutional violations. These allegations do not sufficiently assert an Eighth Amendment "failure to protect" cause of action. See Barnes, 760 F. Supp.2d at 301 (complaint's use of the term "failure to protect" to mean a failure to intervene, or to prevent or remedy the alleged violations of his constitutional rights, does not state an Eighth Amendment claim).

### D. "Fourth Claim"

### 1. Fourth Amendment – Unreasonable Search and Seizure

Hamilton appears to be complaining that he was illegally "searched" during the incident described in the Second Claim, and that his legal papers and the "DNA evidence" were illegally "seized". However, the Supreme Court has held in Hudson v. Palmer, 468 U.S. 517 (1984), that the "Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Id. at 526 (noting that "[t]he recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions"); see also id. at 528 n.8 (stating that the Fourth Amendment's proscription against

unreasonable seizures is inapplicable in a prison cell). <u>Accord</u> <u>Willis v. Artuz</u>, 301 F.3d 65, 67 (2d Cir. 2002). The "unreasonable search and seizure" allegations are more properly interpreted as a claim under the First Amendment's right-to-governmental-redress clause, which is addressed elsewhere in this opinion. Any purported cause of action under the Fourth Amendment based on the facts alleged in the Second Claim is dismissed.

### 2.    Fourteenth Amendment – Due Process

The Due Process Clause of the Fourteenth Amendment protects the right of pretrial detainees to be free from excessive force amounting to punishment, whereas the Eighth Amendment protects convicted detainees to be free from such excessive force. <u>United States v. Walsh</u>, 194 F.3d 37, 47-48 (2d Cir. 1999). The Fourteenth Amendment's Due Process Clause is not applicable to the allegations alleged under the Complaint's Fourth Claim.

### E.    "Sixth Claim"

### 1.    Fourth Amendment – Unreasonable Search and Seizure

In regards to his allegations that his personal property was stolen or destroyed, Plaintiff has asserted a claim under the Fourth Amendment. The Fourth Amendment's proscription against unreasonable searches and seizures has no applicability to these allegations. <u>See</u> <u>Hudson v. Palmer</u>, 468 U.S. at 526 (noting that the "Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell").

## V.   Conclusion

For the foregoing reasons, the following defendants are dismissed from this lawsuit: Comm'r Fischer, Sup't Conway, DSS Chappius, DSH Bezio, DSP Dolce, Capt. Brown, and CO Hembrook. The Clerk of the Court is directed to terminate them as parties and to modify the caption accordingly.

The Court grants Defendants' motion for summary judgment/motion to dismiss (Dkt #10) in part and denies it in part. The following causes of action are dismissed with prejudice:

- violations of "Universal Declaration Human Rights Article Six" (the UDHR) (asserted in the First, Second, Third, Fourth, Fifth, and Sixth Claims)

- violations of the Fourteenth Amendment's Equal Protection Clause (asserted in the First, Second, Third, Fifth, and Sixth Claims)

- violations of the Fourteenth Amendment's Due Process Clause (asserted in the Fifth and Sixth Claims).

The Court denies Defendants' request to dismiss the following causes of action, which remain pending:

- violation of the Fourteenth Amendment's Equal Protection Clause (as asserted in the Fourth Claim)

- violation of the First Amendment's Free Exercise Clause (as asserted in the Fourth Claim)

- violation of the First Amendment's right to petition the government for redress (as asserted in the Fourth Claim).

The Court has <u>sua sponte</u> dismissed with prejudice the following:

-43-

- claims under the Fourteenth Amendment's Due Process Clause, the First Amendment's right of access to the courts, the Eighth Amendment's prohibition against cruel-and-unusual-punishment (except the allegation pertaining to the denial of meals); and Eighth Amendment's duty to protect (as asserted in the First Claim)

- claims under the Fourth Amendment's prohibition against unreasonable searches and seizures, the Fourteenth Amendment's Due Process Clause, and the Eighth Amendment's duty to protect clause (as asserted in the Second Claim)

- violations of the Eighth Amendment, both cruel and unusual punishment and failure to protect (as asserted in the Third Claim)

- violations of the Fourteenth Amendment's Due Process Clause and the Fourth Amendment's prohibition against unreasonable searches and seizures (as asserted in the Fourth Claim)

- violations of the Fourth Amendment's prohibition against unreasonable searches and seizures (as asserted in the Sixth Claim)

The following defendants remain in this action: CO Burgio, CO Dusterhus, Capt. Robinson, and Sgt. Corcoran. The following claims remain pending:

- retaliation in violation of Plaintiff's exercise of free speech under the First Amendment (as asserted in the First, Second, Third, Fourth Claims, and as amplified by the incidents set forth in the Fifth and Sixth Claims)

- violation of the First Amendment's Free Exercise Clause (as asserted in the Fourth Claim)

- violation of the Eighth Amendment's prohibition against cruel and unusual punishment and use of excessive force (as asserted in the Fourth and Fifth Claims)

- Eighth Amendment failure to protect (as asserted in the Fourth Claim)

- violation of the Equal Protection Clause (as asserted in the Fourth Claim)

- interference with Plaintiff's First Amendment right to petition the government for redress/right of access to the courts (as asserted in the Fourth Claim)

The remaining Defendants are directed to file an Answer to the claims in the Complaint that remain pending within thirty (30) days of the date of this Decision and Order. Within thirty (30) days of the date of this Order, Defendants may file a further motion to dismiss the remaining Complaint, accompanied by appropriate exhibits demonstrating that an Answer is unnecessary. The timely filing of such a motion shall extend the time for filing an Answer by fourteen (14) days, but the Court's failure to act upon the motion to dismiss within that time shall not further extend the time to file an Answer.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    July 18, 2013
          Rochester, New York