```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

DERRICK HAMILTON,

            Plaintiff,

    -vs-

Commissioner BRIAN FISCHER, New
York State's Department of
Correctional Services, Director
NORMAN BEZIO, Supt. JAMES CONWAY,
Supt. PAUL CHAPPIUS, Dep. Supt.
Pro. DOLCE, Captain BROWN, Captain
C. ROBINSON, Sergeant PETER
CORCORAN, CO C. BURGIO, CO M.
DUSTERHUS, CO HEMBROOK,

            Defendants.

**DECISION AND ORDER
No. 6:12-cv-06449(MAT)**

_____

**I.   Introduction**

Proceeding pro se, Derrick Hamilton ("Plaintiff") instituted this action pursuant to 42 U.S.C. § 1983 asserting various violations of his constitutional rights by Defendants, who are employees of the New York State Department of Corrections and Community Supervision ("DOCCS"). This Court issued a Decision and Order partially granting Defendants' motion to dismiss several individual defendants and causes of action. Sergeant ("Sgt.") Corcoran, Corrections Officer ("CO") Burgio, and CO Dusterhus have moved for summary judgment (Dkt #49) dismissing Plaintiff's First Amendment claim for the denial of access to the courts on the basis that he has failed to show that he suffered an actual injury.

## II.  Background

The following facts are taken from the pleadings, depositions, and other documents filed in this matter, and are viewed in the light most favorable to Plaintiff.

During the afternoon of August 19, 2009, CO Burgio and CO Dusterhus "attempted to piss on [Plaintiff] by urinating through the air vent" to his cell (Number B/19/25), and only stopped when Plaintiff announced, "Thanks for the DNA!" Complaint ("Compl.") at 5-6 (Dkt #1). Plaintiff used a new towel to soak up the urine and placed the towel in a plastic bag in order to preserve it as evidence.

On October 8, 2009, at about 10:04 a.m., Plaintiff was summoned to a visit with Investigator Wiley from DOCCS' Inspector General's Office. Plaintiff recently had filed complaints against CO Burgio and CO Dusterhus regarding the August 19, 2009 incident. As he was being escorted to the visiting room, he was ordered to by Sgt. Corcoran, CO Burgio, CO Dusterhus to turn over his legal folder to CO Dusterhus and submit to a pat-frisk. Plaintiff states that this was unusual because he was not keep-locked and would have been pat-frisked and sent through a metal detector prior to entering the visiting room. After searching through the materials Plaintiff was carrying with him, CO Dusterhus found the DNA evidence (i.e., the urine-soaked towel in the plastic bag) and nodded to CO Burgio, who grabbed Plaintiff by his dreadlocks and

yanked his head back, causing Plaintiff so much pain that he defecated himself. CO Dusterhus then joined in the attack, and began battering Plaintiff in the head with his baton.[1] Plaintiff, obviously, did not make it to his meeting with Investigator Wiley. CO Dusterhus did not return the bagged plastic towel or any of the other items to Plaintiff.

### III.  Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see generally, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp., 477 U.S. at 324.

In order to establish a material issue of fact, the nonmovant need only provide "sufficient evidence supporting the claimed factual dispute" such that a "jury or judge [is required] to resolve the parties' differing versions of the truth at trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S.

---

[1] Plaintiff's Eighth Amendment excessive-force claim against these officers is proceeding and is not the subject of the instant summary judgment motion.

253, 288-89 (1968)). Because Plaintiff's complaint alleges civil rights violations, and he is proceeding pro se, the Court must "construe his complaint with particular generosity." Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002) (per curiam) (citing Vital v. Interfaith Med. Ctr., 168 F.3d 615, 619 (2d Cir. 1999)), abrogated on other grounds, Porter v. Nussle, 534 U.S. 516 (2002).

**IV. Discussion**

Inmates have a First Amendment right to "petition the Government for a redress of grievances." See U.S. CONST., amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."). The Supreme Court has "made explicit that 'the right to petition extends to all departments of the Government,' and that '[t]he right of access to the courts is . . . but one aspect of the right of petition.'" BE & K Const. Co. v. N.L.R.B., 536 U.S. 516, 525 (2002) (quoting California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972) (alteration and ellipsis in original)). In the prison contact, this right requires prison officials "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Bounds v. Smith, 430 U.S. 817, 825 (1977); accord Lewis v. Casey, 518 U.S. 343, 351 (1996)).

In order to establish a claim that his right of access to the courts has been violated, the plaintiff must show actual injury.

See Lewis, 518 U.S. at 351-52 ("Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which Bounds relied. . . .") (citations omitted). That is, the plaintiff must demonstrate that a prison official "took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim,'" Monsky v. Moraghan, 127 F.3d 243, 47 (2d Cir. 1997) (quoting Lewis, 518 U.S. at 351; alteration in Monsky).

Defendants Sgt. Corcoran, CO Dusterhus, and CO Burgio argue that Plaintiff has failed to show an actual injury under Lewis, supra, because "[t]here is no evidence that Plaintiff has not been able to pursue a § 1983 claim because of the allegedly lost legal material" and he "has not shown what, if any, legal claim was impaired or impeded." Defs' Mem. at 7. Defendants suggest that Lewis restricted the legal claims covered by Bounds' right of access to "'civil rights actions'—i.e., actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'" Lewis 518 U.S. at 354 (quoting Wolff v. McDonnell, 418 U.S. 539, 579 (1974)). However, Defendants take this statement out of context. It was made in connection with Lewis's observation that Bounds "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder

derivative actions to slip-and-fall claims." Id. Rather, Lewis explained, Bounds requires inmates to be provided with what is "need[ed] in order to attack their sentences, directly or collaterally, and in order to *challenge the conditions of their confinement.*" Lewis, 518 U.S. at 356 (emphasis supplied). The internal complaint Plaintiff intended to file with the Inspector General's Office regarding CO Dusterhus and CO Burgio urinating into the vent of his cell would have challenged the conditions of his confinement. Moreover, as noted above, the right of access is one aspect of the right to petition, which includes the right to file grievances through administrative channels in the prison. See, e.g., Govan v. Campbell, 289 F. Supp.2d 289, 297 (N.D.N.Y. 2003) (analyzing inmate's claim that was prevented from filing grievances under First Amendment right to petition the government for the redress of grievances) (citations omitted).

Plaintiff testified he had been "trying to get somebody to look at the evidence, . . . [had] been trying to get somebody to--outside of the facility, to actually investigate the matter" and he "felt confident that that evidence would be conclusive because everybody--the excuse that everybody had been using, like [his] word alone is not material evidence of--of these officers' misconduct." Pl's Dep. 113:4-11. Plaintiff wrote to the Inspector General's Office, as well as the Deputy Superintendent of Security for Attica and "told them that since they said that they needed

actual evidence, I thought that that [i.e., the urine-soaked towel] was actual material evidence and they should come and get it." Pl's Dep. 62:18-21. This apparently precipitated the visit from Investigator Wiley. As noted above, Plaintiff was prevented from meeting with Investigator Wiley because he was involved in the excessive-force incident. Plaintiff testified that Investigator Wiley came to see him in SHU on October 9th, "because it had never happened to her before, where . . . a person that she was going to meet with got assaulted on his way to a meeting with her." Plaintiff stated that Investigator Wiley told him she tried to see him later that day, but was informed that he was incapacitated and could not meet with her on October 8th, which is why she came back on October 9th. Pl's Dep. 115:16-25. He did not have the physical evidence or any of his legal materials to show her, however. Based on the foregoing, the Court finds that Plaintiff has raised a genuine issue of material fact as to whether Sgt. Corcoran, CO Dusterhus, and CO Burgio "took or was responsible for actions that 'hindered [Plaintiff's] efforts to pursue a legal claim,'" <u>Monsky</u>, 127 F.3d at 247 (quotation omitted). Therefore, summary judgment on Plaintiff's First Amendment claim based on the denial right of access to the courts is denied.

## V. Conclusion

For the foregoing reasons, the motion for summary judgment (Dkt #49) by Sgt. Corcoran, CO Dusterhus, and CO Burgio is denied

in its entirety. Plaintiff's First Amendment claim based on the denial of access to the courts remains pending.

**SO ORDERED.**

S/Michael A. Telesca

_____

HON. MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         December 7, 2015