UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

DERRICK HAMILTON,

            Plaintiff,

    -vs-

Captain C. ROBINSON, Sergeant PETER
CORCORAN, CO C. BURGIO, CO M.
DUSTERHUS, CO HEMBROOK,

            Defendants.

**DECISION AND ORDER**
**No. 6:12-cv-06449(MAT)**

───────────────────────────────

## I.    Introduction

Proceeding pro se, Derrick Hamilton ("Plaintiff") instituted this action pursuant to 42 U.S.C. § 1983 asserting various violations of his constitutional rights by the named Defendants, who are employees of the New York State Department of Corrections and Community Supervision ("DOCCS"). Presently before the Court is the Motion for Summary Judgment (ECF #77) by Christi Robinson ("Robinson"). Robinson, a retired corrections captain, presided over Plaintiff's Tier III disciplinary hearing held at Attica Correctional Facility on October 14, 16, 17, and 23, 2009. Robinson now moves to dismiss Plaintiff's claims that Robinson (1) subjected him to excessive force at the disciplinary hearing by allowing him to be restrained in overly tight handcuffs, and (2) violated Plaintiff's procedural due process rights by denying him access to his prescription glasses during the hearing. In support of his motion, Robinson submitted a Statement of Undisputed Facts (ECF

#77-1), a Local Rule 56.2 Statement (ECF #77-2), Declaration of Christi Robinson & Exhibits ("Exs.") A-I (ECF #77-3), Declaration of William Robinson & Ex. A (ECF #77-4 & 78), Declaration of Rachael Seguin & Exs. A-G (ECF #77-5), Declaration of Bernard Sheehan, Esq. & Ex. A (ECF #77-6), and Memorandum of Law (ECF #77-7).

After obtaining multiple extensions of time (ECF ##79, 81, 84, 90, 91, & 93), Plaintiff filed and submitted a Statement of Material Facts Requiring a Trial-Response to Defendant's Rule 56 (ECF #98) and Memorandum of Law in Opposition (ECF #99), and Affirmations (ECF ## 95-97). Robinson filed a Reply Declaration & Ex. A (ECF #102) and a Reply Memorandum of Law (ECF #102-1).

The motion was submitted on the papers on September 6, 2018. For the reasons discussed below, summary judgment is granted in favor of Robinson, and Plaintiff's claims against him are dismissed with prejudice.

## II. Preliminary Matters

Robinson has objected to the length of Plaintiff's Memorandum of Law in Opposition; at 31 pages, it exceeds the 25-page limit set forth in Western District of New York Local Rule of Civil Procedure ("Local Rule") 7(a)(2)(C). In addition, Robinson notes, some of the pages in Plaintiff's Memorandum of Law appear to have more lines than they should have if they were double-spaced as required by Local Rule 10(a)(2).

In this Circuit, the *pro se* litigant must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. *E.g., Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620–21 (2d Cir. 1999). Here, as part of his summary judgment motion papers, Robinson served Plaintiff with a copy of the Western District of New York Local Rules of Civil Procedure Rule 56(2) notice. Therefore, it is clear that Plaintiff received express notice of the requirements for responding to Robinson's summary judgment motion and the consequences of failing to oppose it properly.

The Court agrees that Plaintiff's brief is not in compliance with Local Rule 7(a)(2)(C) and that some of the pages in that brief may not be in strict compliance with Local Rule 10(a)(2). These procedural deficiencies are not egregious, however, and the Court will accept Plaintiff's Memorandum of Law in Opposition (ECF #99) for filing.

The substantive deficiencies pointed out by Defendant in Plaintiff's other opposition papers are more problematic. First, in his "Statement of Material Facts Requiring a Trial–Response to Defendant's Rule 56 Statement ("Plaintiff's SOF") (ECF #98), Plaintiff generally fails to offer responding statements of fact as required by L.R. 56(a)(2),[1] instead posing numerous questions such

---

[1]
   "The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short

as "[w]hether DOCCS has created a grievance system that [is] clear enough to be easily understood." Id., ¶ 38, p. 4 of 13. To the extent that Plaintiff has failed to offer a declarative statement of fact in a correspondingly numbered paragraph in opposition to each factual averment in Robinson's Statement of Material Facts Not in Dispute, the Court has deemed such factual averments admitted by Plaintiff. *See* W.D.N.Y. LOCAL R. CIV. P. 56(a)(2) ("Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.").

Furthermore, Plaintiff fails to cite to admissible evidence in support of his statement of facts, as required by Rule 56(c)(1) of the Federal Rules of Civil Procedure and Local Rule 56(a). Instead, Plaintiff repeatedly cites to statements in his Memorandum of Law in Opposition ("Pl.'s Opp. Mem."). *See, e.g.,* Pl.'s SOF (ECF #98) at 4, ¶ 38 (citing Pl.'s Opp. Mem. (ECF #99) at 7, ¶ 3). In addition, Plaintiff cites two newspaper articles, which are not admissible evidence. *See* ECF #95-1 and ECF #99-1. *See, e.g., McCallister v. New York City Police Dep't.,* 49 F. Supp.2d 688, 705 n.12 (S.D.N.Y. 1999) ("Newspaper articles are hearsay . . . and . . . are not admissible evidence.") (citing *Ladner v. City of*

---

and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried. . . ." W.D.N.Y. LOCAL R. CIV. P. 56(a)(2).

*New York*, 20 F. Supp. 509, 519 (E.D.N.Y 1998) (newspaper article was inadmissible hearsay and incapable of defeating summary judgment); other citations omitted; *see also* FED. R. CIV. P. 56(c)(2). Moreover, Plaintiff has failed to establish the relevancy of the articles, inasmuch as neither article mentions the parties or the events at issue in this litigation. Therefore, the Court has disregarded them.

## III. Factual Background

The following factual summary is gleaned from the pleadings and transcripts on file in this case, particularly Robinson's Statement of Undisputed Material Facts and Plaintiff's deposition testimony.[2]

### A. Facts Relating to the Excessive Force Claim

At the disciplinary hearing conducted by Robinson on October 14, 16, 17, and 23, 2009, Plaintiff was handcuffed behind his back. The handcuffs were "extremely tight" and were unnecessary because he "was in the cage." Plaintiff complained about the handcuffs to Robinson and to the escorting officers at the beginning of the hearing and throughout the hearing. He asked that if he could be waist-chained to the front, so he could at least manipulate his paperwork and participate in the hearing. Plaintiff was unable to use his hands during the hearing to go through his

---

[2]

Plaintiff's deposition transcript is attached as Ex. A to the Declaration of Bernard Sheehan, Esq. (ECF #77-6). The Court has cited to the actual page numbers in the transcript, which will be cited as "Tr."

papers. Tr. 18-20.[3] The handcuffs left "welts and bruises," Tr. 20-21, and caused shoulder, elbow, and wrist pain. He had never been handcuffed like that, with his hands "inside out," for that length of time. He could not rotate his hands within the cuffs because they were so tight. The shoulder and elbow pain was relieved once the cuffs and chains were removed. However, Plaintiff's wrist pain "lasted way after" the handcuffs were removed, possibly even for months or more than a year. Tr. 21, 22, 23. The handcuffs caused "way more than bruising" to Plaintiff's wrists; they caused "deep grooves and basically, like, bone damage." Tr. 22. He has "[p]robably more phantom pain right now, because . . . it's kind of like psychologically traumatizing to the point that it does occur every now and then." Tr. 23. He would not say that he has healed, but the pain is not as bad. Tr. 23-24. For the next 427 days while he was in SHU, he was basically subjected to the re-aggravation of the too-tight handcuffs, because "every time you move in the SHU, . . . you had to basically be handcuffed all over again," and the corrections officers "put the handcuffs on you the same way" due to the "basically . . . retaliatory nature of the charges." Tr. 35.

---

[3] Plaintiff's deposition transcript is attached to the Declaration of Bernard F. Sheehan, Esq. as Exhibit ("Ex.") A.

**B.    Facts Relating to the Due Process Claim**

Plaintiff claims that Robinson denied him due process at the same October 2009 disciplinary hearing because Robinson did not ensure that Plaintiff had his prescription eyeglasses. At the time of the hearing, Plaintiff had been placed in the Special Housing Unit ("SHU") at Attica Correctional Facility ("Attica C.F.") and he did not have all of his personal property, including his eyeglasses. Tr. 39-40. If he reads too long without his eyeglasses, then he gets severe migraines. Tr. 38. Because he did not have his glasses, he was in "excruciating" pain and "basically blind" from a migraine and therefore could not participate fully in the hearing. Tr. 53-54. Before he gets a migraine, he can see fairly well even without his glasses. Tr. 54. At the hearing, however, the Plexiglas of the "cage" was very smudged and dirty. He was unable to read anything at the hearing without his glasses, and was unable to participate or concentrate. Tr. 54-56.

## IV.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[S]ummary judgment may not be granted unless 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir. 1994) (quoting FED. R. CIV. P. 56(c)).

The moving party bears the initial burden of "informing the district court of the basis for its motion," and demonstrating "the absence of a genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo, 22 F.3d at 1223-24 (citing *Celotex*, 477 U.S. at 325; *DiCola v. SwissRe Holding (North America), Inc.*, 996 F.2d 30, 302 (2d Cir. 1993)).

In deciding a summary judgment motion, "the district court 'must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *American Cas. Co. of Reading, Penn. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir. 1994) (quoting *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir. 1993)). A grant of summary judgment is appropriate "[w]hen no rational jury could find in favor of the non-moving party because the evidence to support its case is so slight," that is, "there is no genuine issue of material fact . . . ." *Gallo*, 22 F.3d at 1224 (citing *Dister v. Cont. Grp., Inc.*, 859 F.2d 1108, 1144 (2d Cir. 1988)). A party's "bald assertion, completely unsupported by evidence," *Carey v.*

*Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991), is not sufficient to overcome a motion for summary judgment, or to prevail on such a motion. *Id.* (non-movant's "bald assertion, completely unsupported by evidence," "certainly did not 'present[ ] a sufficient disagreement to require submission to a jury' as required by FED. R. CIV. P. 56(c)").

## V. Discussion

### A. Exhaustion of Administrative Remedies

#### 1. Legal Principles

The Prison Litigation Reform Act ("PLRA") makes exhaustion of administrative remedies a mandatory precondition to commencement of a Section 1983 action. Under 42 U.S.C. § 1997e ("Section 1997e"), "[n]o action shall be brought with respect to prison conditions under [Section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 532 (2002) (exhaustion is required for "all inmate suits about prison life"). "Section 1997e(a) requires 'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly.'" *Amador v. Andrews,* 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Woodford v. Ngo,* 548 U.S. 81, 90 (2006); other quotation omitted; emphasis omitted in original). In short, "[e]xhaustion is

mandatory—unexhausted claims may not be pursued in federal court." *Amador,* 655 F.3d at 96 (citations omitted).

Failure to exhaust administrative remedies under Section 1997e(a) is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007). Thus, the defendant has the burden of proving that a plaintiff has not exhausted claims before filing in court. *Hubbs v. Suffolk Cnty. Sheriff's Dep't,* 788 F.3d 54, 59 (2d Cir. 2015).

Under the Second Circuit's decision in *Hemphill v. New York,* 380 F.3d 680 (2d Cir. 2004), courts could excuse an inmate's failure to exhaust administrative remedies when "(1) the administrative remedies were not in fact available; [or] (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) 'special circumstances justify the prisoner's failure to comply with administrative procedural requirements.'" *Dabney v. Pegano,* 604 F. App'x 1, 3 (2d Cir. 2015) (unpublished opn.) (quoting *Hemphill,* 380 F.3d at 686).

However, in *Ross v. Blake*, ___ U.S. ____, 136 S. Ct. 1850 (2016), the United States Supreme Court abrogated *Hemphill*'s "special circumstances" exception. *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016). "In *Ross*, the [Supreme] Court held that, aside from the 'significant' textual qualifier that 'the remedies must indeed be "available" to the prisoner,' there are 'no limits on an inmate's obligation to

exhaust—irrespective of any "special circumstances."'" *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1856). The Second Circuit observed in *Williams* that *Ross* "largely supplants [its] *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." 829 F.3d at 123 (citing *Ross,* 136 S. Ct. at 1858–59)).

In light of *Ross*, the Second Circuit in *Williams* reframed its exhaustion analysis as requiring a two-part inquiry by the court. First, the court must ask "whether administrative remedies were *in fact* available to the plaintiff." 829 F.3d at 122 (emphasis supplied). Second, the court must consider "whether administrative remedies were *actually* available to the aggrieved inmate." *Id.* at 123 (citing *Ross,* 136 S. Ct. at 1858–59; emphasis supplied). *Id.*

## 2. Application to the Excessive Force Claim Based on Tight Handcuffing

Robinson contends that Plaintiff failed to grieve to completion his excessive force claim based on the use of excessively tight handcuffs during the October 2009 disciplinary hearing. Therefore, Robinson concludes, Plaintiff's excessive force should be dismissed for failure to exhaust his administrative remedies. Plaintiff testified at his deposition that he did not recall if he filed a grievance related to the handcuffs being too tight at the disciplinary hearing. Tr. 24-25, 27. He admitted that

he did not file a grievance about it while he was still at Attica C.F., but left open the possibility that he may have filed such a grievance at a later time. Tr. 25.

This Court therefore now must determine if there are genuine issues of material fact as to (1) whether administrative remedies were in fact available to Plaintiff, as a DOCCS inmate, to grieve the handcuffing claim; and, if so, (2) whether such remedies were actually available to him. *See Williams*, 829 F.3d at 122.

### a. "In Fact" Available

New York State's Inmate Grievance Program ("IGP") was first established in 1976 pursuant to New York Corrections Law § 139. *Amador*, 655 F.3d at 96-97 & n. 3 (citations omitted). The IGP defines a grievance as "a complaint, filed with an IGP clerk, about the substance or application of any written or unwritten policy, regulation, procedure or rule . . . or the lack [thereof][.]" N.Y. COMP. CODE R. & REGS., tit. 7 ("N.Y.C.R.R.") § 701.2(a) (2006). To initiate the three-step grievance process, an inmate must file a written complaint with the Inmate Grievance Resolution Committee ("IGRC"),[4] a facility-specific committee composed of inmates and appointed staff members. *See* N.Y.C.R.R. § 701.4-.5. The complaint must "contain a concise, specific description of the problem and

---

[4] "Typically, inmates file grievances with the grievance clerk." *Williams*, 829 F.3d at 119 (citing N.Y.C.R.R. § 701.5(a)(1)). "However, if an inmate is housed in the special housing unit . . ., and therefore segregated from the regular prison population, he may give the grievance complaint to a correction officer to file for him." *Id.* (citing N.Y.C.R.R. § 701.7).

the action requested." N.Y.C.R.R. § 701.7(a)(1)(i) (1998) (now codified as amended at N.Y.C.R.R. § 701.5(a)(2) (2007)). Upon filing, the grievance clerk numbers and logs each grievance. *Id.* § 701.5(a)(2).

If the inmate receives an unfavorable IGRC determination, the second step is to file an appeal with the facility superintendent. *See* N.Y.C.R.R. § 701.7(b) (1998) (now codified as amended and renumbered at N.Y.C.R.R. § 701.5(c) (2007)). If the superintendent's decision is unfavorable, the third step is an appeal to the Central Office Review Committee ("CORC"). *See* N.Y.C.R.R. § 701.7(c) (1998) (now codified as amended and renumbered at N.Y.C.R.R. § 701.5(d) (2007)); *see also* DOCCS Directive #4040 ("Dir. #4040").

Inmates are provided with information regarding the grievance program at their initial intake orientation and any time they transfer to a new facility. *See* Declaration of Rachael Seguin ("Seguin Decl.") (ECF #77-5) ¶ 4.[5] Directive #4040 is distributed to every DOCCS facility and is available in every DOCCS facility law library and grievance office. Inmates confined to a facility's SHU, or otherwise not living in general population, will be provided with such materials from the law library for in-cell use upon request. *Id.* ¶ 5.

---

[5] Seguin is the Assistant Director of the IGP for DOCCS. As such, she is fully familiar with the processes, policies, and procedures available for the filing of inmate complaints in the DOCCS system.

In light of the established policies and procedures discussed above, which are widely distributed and readily accessible to inmates within DOCCS, the Court finds as a matter of law that administrative remedies were in fact available to Plaintiff.

### b. Actually Available

The Supreme Court has explained that "the ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross*, 136 S. Ct. at 1858–59 (quoting *Booth v. Churner*, 532 U.S. 731, 737-384 (2001) (further quotations omitted; internal quotation marks omitted). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth,* 532 U.S. at 738).

Here, Robinson has established that there were grievance procedures capable of use by Plaintiff to obtain some relief for the action about which he complains. Seguin, who is also the custodian of records maintained by the CORC, indicates that when an inmate appeals a grievance to the CORC, Dir. #4040 stipulates that it is DOCCS policy to maintain grievance files for the current year plus the previous four (4) calendar years. The CORC maintains files of such grievance appeals in accordance with Dir. #4040. Additionally, the CORC computer database contains records of all appeals of grievances received from a facility's IGP supervisor, as

well as those reviewed under the expedited procedure of 7 N.Y.C.R.R. § 701.8, which were heard and decided by the CORC since 1990. Seguin Decl. ¶ 6.

In connection with the pending summary judgment motion, Seguin reviewed the records for all grievances appealed to the CORC by Plaintiff. *Id.* ¶ 9. In particular, Seguin searched for records of any grievances filed by Plaintiff regarding incidents at Attica C.F. from October 14, 2009, to October 23, 2009. *Id.* ¶ 10. The records obtained by Seguin show that Plaintiff filed and appealed eight (8) grievances to the CORC while he was at Attica C.F. from approximately April 2009, to approximately December 2009. *Id.* ¶ 12 & Ex. B at D000099. The first three (3) of these grievances were filed before October 14, 2009. *Id.* ¶ 13 & Ex. B at D000099. Since these grievances were filed *before* the commencement of the disciplinary hearing at issue, they could not relate to Plaintiff's claim of being subjected to excessively tight handcuffs during the hearing.

The remaining five (5) grievances filed by Plaintiff at Attica C.F. do not pertain to the tight handcuffing claim. Instead, these grievances relate to different types of alleged misconduct by facility staff, such as the making of threats against Plaintiff, stealing or destroying his property, and retaliating against him. None of these grievances relate to claims of handcuffs being too tight at a disciplinary hearing. *See* Seguin Decl. ¶¶ 14-19 &

-15-

Exs. C, D, E, F, & G. The results of Seguin's search are thus consistent with Plaintiff's deposition testimony. He admitted that he "definitely" did not file a grievance about the handcuffs while he was still at Attica C.F.; if he did file one, it was "more than likely" after he left that facility. Tr. 25.

Seguin also searched the CORC's records for grievances filed by Plaintiff after he left Attica C.F. The CORC records submitted by Seguin indicate that the last grievance Plaintiff filed at Attica C.F. was Grievance A-56241-09. The next grievance filed after that was SPT-48660-10, which was filed on February 16, 2010, when Plaintiff was housed at Southport Correctional Facility. *See* Seguin Decl. ¶ 22 & Ex. B at D000099. The subject of this grievance was the alleged denial of 40 manila legal folders. *Id.*

Because there is 21-day time limit on filing grievances,[6] any grievance related to handcuffs being too tight during a disciplinary hearing from October 14, 2009, to October 23, 2009, would have had to have been filed by November 13, 2009, i.e., 21 days after October 23, 2009. *See* Seguin Decl. ¶ 20 & Ex. A at 4). Otherwise, it would have been considered untimely. *Id.* ¶ 21. As discussed above, the records submitted by Seguin indicate that none of the grievances filed by Plaintiff before November 13, 2009, related to the tight handcuffing at the October 2009 disciplinary

---

[6] "The grievance process begins with the filing of a complaint within 21 days of an alleged incident." *Williams*, 829 F.3d at 119 (citing N.Y.C.R.R. § 701.5(a)(1)).

hearing. Therefore, Plaintiff did not file a timely grievance about this incident.

At his deposition, Plaintiff conceded that the lists of grievances compiled by Seguin based on her records search did not include any grievances filed by Plaintiff related to excessively tight handcuffing. However, Plaintiff asserted, the lists failed to "show a lot of other grievances" that he did file during the same time-frame. Tr. 26, 28. Plaintiff testified that he thought he had documents that relate to a grievance he filed regarding the tight handcuffs back in his cell. Tr. 29. However, despite a post-deposition document request from Robinson (Tr. 29-30), Plaintiff has never produced those records. Plaintiff has failed to come forward with evidence in admissible form to show that there is a genuine issue of material fact about whether he properly exhausted his administrative remedies as to the tight handcuffing claim.

Finally, it bears emphasizing that Plaintiff has been incarcerated in the DOCCS system since at least 1989, and had filed and appealed at least 20 grievances to the CORC before the events in October 2009. *See* Seguin Decl. ¶¶ 23-24. There is, therefore, no genuine issue of material fact that, at the relevant time, Plaintiff was familiar with the grievance procedure and had utilized it on numerous occasions. *See id.* ¶ 25. Plaintiff has failed to present any evidence to establish a genuine issue of material fact as to whether the inmate grievance procedures were

actually available to him or capable of being used in connection with his claim of excessively tight handcuffs at the October 2009 disciplinary hearing. Therefore, dismissal of this claim for failure to exhaust is warranted.

**B. Alternatively, Plaintiff's Excessive Force Claim Fails as a Matter of Law**

"Analysis of a claim for use of excessive force begins with 'identif[ication of] the specific constitutional right allegedly infringed by the challenged application of force.'" *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Graham v. Connor,* 490 U.S. 386, 394 (1989); alterations in original; other citations omitted). "In the context of a claim by a prisoner that he was subjected to excessive force by prison employees, the source of the ban against such force is the Eighth Amendment's ban on cruel and unusual punishments." *Id.* Such a claim must "be judged by reference to th[is] specific constitutional standard . . ., rather than to some generalized 'excessive force' standard." *Graham*, 490 U.S. at 394. "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright*, 554 F.3d at 268 (citing *Hudson v. McMillian,* 503 U.S. 1, 7–8 (1992); other citation omitted).

Because Robinson was not the individual who actually applied the allegedly too-tight handcuffs, the specific claim against him

-18-

is more in the nature of a "failure to protect" claim. The Eighth Amendment also requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. *Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan,* 511 U.S. 825, 833 (1994)). Prison officials will be liable for harm sustained by an inmate if the officials acted with "deliberate indifference" to the inmate's safety. *Id.* To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration (i) possessed actual knowledge of the use by another of excessive force; (ii) had a realistic opportunity to intervene and prevent the harm from occurring; and (iii) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

Here, Robinson has established the absence of a genuine issue of material fact as to the actual knowledge component of a failure to protect claim. In other words, drawing all inferences in Plaintiff's favor, no rational factfinder could conclude that Robinson acted with deliberate indifference to a violation of Plaintiff's constitutional rights. The evidence submitted by Robinson establishes that Plaintiff never lodged a complaint during the hearing about the handcuffs being too tight. Therefore,

Robinson did not have actual knowledge that a potential constitutional violation was occurring. The Court has reviewed the transcript of the disciplinary hearing. Although Plaintiff did request to be waist-chained instead of handcuffed behind his back, the transcript reflects no complaint by Plaintiff about the tightness of the handcuffs.

Because Plaintiff challenged the accuracy of the transcript, Robinson submitted a cassette tape recording of the hearing. The Court has listened to the cassette tape, and finds that, despite Plaintiff's suggestion to the contrary, the transcript is an accurate documentation of what was said at the hearing. The audiotape confirms the Court's conclusion that there is no genuine issue of material fact as to whether Plaintiff participated fully in the hearing. The tape reveals that Plaintiff spoke in a calm and measured manner when asking questions of Robinson; he explained his defense articulately; he posed cogent objections; and he certainly did not sound as though he were in any physical or mental distress.

"Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim become immaterial and cannot defeat a motion for summary judgment." *Schy v. State of Vermont,* 2 F. App'x 101, 102 (2d Cir. 2001) (unpublished opn.) (citing *Celotex Corp.,* 477 U.S. at 322-23; other

citations omitted). Having found that Plaintiff has failed as a matter of law to establish the element of actual knowledge by Robinson of an alleged constitutional violation, the Court need not consider the remaining elements of Plaintiff's claim that Robinson failed to protect him from an excessive use of force.

### C. Plaintiff's Due Process Claim Fails as a Matter of Law

A sanction imposed by prison officials on a prisoner is "not comparable to a criminal conviction." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 456 (1985). Consequently, "the constitutionally required procedures for imposing such a sanction are not as exacting as those applicable to a conviction." *Powell v. Coughlin*, 953 F.2d 744, 748 (2d Cir. 1991) (citation omitted). The constitutionally mandated procedurally due process requirements are written notice of the charges; the opportunity to appear and a reasonable opportunity to present witnesses and evidence in the inmate's defense; and a written statement by the hearing officer explaining his decision. *Wolff v. McDonnell*, 418 U.S. 539, 564-69 (1974). In addition, to succeed on a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors. *See Powell*, 953 F.2d at 750 ("[I]t is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal

appellate assessment as to whether the error was harmless or prejudicial.").

Plaintiff contends that his lack of access to his eyeglasses deprived him of the opportunity to participate fully in the hearing. As discussed above in the foregoing section, the Court both has reviewed the hearing transcript and listened to the audiotape recording of the hearing, and it is clear that Plaintiff not only had the opportunity to, but actually did, participate in the hearing. And, when Plaintiff informed Robinson that he needed additional time to read through the documents he had requested and received at the hearing, because he did not have his glasses, Robinson adjourned the hearing for a day. *See* Transcript of Disciplinary Hearing (ECF #77-3) at D000086.

Moreover, Plaintiff has failed to come forward with evidence in admissible form to create a genuine issue of material fact as to how his ability to understand the charges against him, participate fully in the hearing, and mount a defense were affected in any way by not having access to his eyeglasses. At his deposition, Plaintiff admitted that he can see fairly well without his glasses until he gets a headache. Tr. 38, 54. Although Plaintiff claimed at his deposition that he had developed a migraine during the hearing and could not see, nothing in the transcript or in the audiotape recording reflects any complaint by Plaintiff that he had a

headache. Further, as noted above, Plaintiff did not sound as if he were in any pain or discomfort during the hearing.

Plaintiff has not quantified the effect of not wearing his glasses at the hearing but speculates only that, if he had worn his glasses, he would have been able to present his information in a way that was "a little bit more persuasive" and that he "would have been able to understand questions more clearly." Tr. 56. First, it is unclear how Plaintiff's lack of eyeglasses had any effect on his ability to hear and understand questions posed orally by the hearing officer. Second, these vague assertions do not suffice to show the necessary prejudice, especially given that the Supreme Court requires only "some evidence" to support a finding of guilt in the prison disciplinary context. *See Hill*, 472 U.S. at 455–56. Notably, the Supreme Court explained, the "some evidence" standard "does *not* require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence;" rather, "the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (emphases supplied). In light of the undemanding nature of the "some evidence" standard as explicated in *Hill*, Plaintiff's belief that he could have presented his defense "a little bit more persuasive[ly]" simply cannot demonstrate that the outcome of the hearing would have been different, but for the alleged due process error. *See*, *e.g.*, *Pacheco v. Vanwyk*, 164 F.3d

618 (2d Cir. 1998) (granting summary judgment to prison official on claim that he provided inmate with inadequate assistance at disciplinary hearing where "review of the record show[ed] nothing about [the defendant]'s assistance that was inadequate or prejudicial to [plaintiff]") (citation omitted).

## VI. Conclusion

For the foregoing reasons, the Court grants defendant Christi Robinson's Motion for Summary Judgment (ECF #77) in its entirety. Plaintiff's excessive force and due process claims against Robinson are dismissed with prejudice. The Clerk of Court is directed to terminate Robinson as a defendant and to amend the caption accordingly.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:      September 11, 2018
            Rochester, New York.